Yvette **OAKS**, Plaintiff,

v.

**DISTRICT COURT OF the STATE OF RHODE ISLAND, Chief Clerk of the District Court of the State of Rhode Island, Chief Clerk of the Superior Court of the State of Rhode Island, and Steven Van Eyk, Defendants.**

Civ. A. No. 83–0190–S.

United States District Court, D. Rhode Island.

April 1, 1986.

Rhode Island Legal Services, Inc., John W. Dineen, Michael V. Milito, Providence, R.I., for plaintiff.

Arlene Violet, Atty. Gen., Linda MacDonald, Asst. Atty. Gen., Timothy Mullaney, Amelia I. Jestings, Sp. Asst. Attys. Gen., Providence, R.I., for defendants.

Gunning, LaFazia & Gnys, Netti S. Vogel, Providence, R.I., for defendant Van Eyk.

## OPINION AND ORDER

SELYA, District Judge.

This civil action was filed in this court on March 21, 1986. The plaintiff was granted leave to proceed in forma pauperis. At issue is the constitutionality of R.I.G.L. § 9–12–12 (quoted *post* n. 3), a state statute which necessitates the posting of an appeal bond in an action for possession of tenements let. (The state statutory scheme is described *post* Part II.) The court turns without further ado to the stip-

ulated facts and to the travel of this peregrine litigation.

## I.

Plaintiff Yvette Oaks (Oaks) and her two minor children are tenants at 277 Main Street in the Fiskeville section of Cranston, Rhode Island. Oaks is admittedly a person of insubstantial means: her gross income is $500.00 monthly, which she receives under the federal Aid to Families with Dependent Children Program. Defendant Steven Van Eyk (Van Eyk) is the plaintiff's landlord. Van Eyk took title to the subject real estate on June 3, 1985. When he did so, he "inherited" Oaks as a tenant.

■ There is a written lease. The agreement provides for a monthly rent of $220. The tenant pays for all utilities (except water). The length of the tenancy remains in dispute (Van Eyk asserts that it runs from month to month, the plaintiff claims that she is entitled to a longer tenure). This issue is beside the point: the litigation between the parties in the state courts will ultimately resolve the terms and duration of the tenancy and the rights and obligations of the parties vis-a-vis the subject real estate. Such questions are not cognizable in this federal court proceeding. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1742, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923).

Van Eyk, whatever may have been his reason, served Oaks with a notice to quit on December 5, 1985. Finding his impoverished tenant unwilling to vacate the premises, Van Eyk resorted to the judicial process. He commenced an eviction action in the Rhode Island District Court (Eighth Division) (*Van Eyk v. Oaks*, C.A. No. 86–22). At trial in the Eighth District Court, Judge Chaharyn rejected Oaks's merits defense and granted Van Eyk the relief which he sought (possession and a few days' back rent). A judgment to that effect was entered on March 19, 1986.

Oaks desired to prosecute an appeal of this ruling to the state superior court. In order to facilitate this course of action, she moved the district court for, and was granted, a waiver of the filing fee. Coincidentally, she moved that the statutory appeal bond, *see* R.I.G.L. § 9–12–12, consist solely of a requirement that she remain current in her rent payments. That motion was summarily denied and the court set the bond at $2000. Oaks was financially unable to meet the state district court's bond requirement.

The plaintiff, threatened by the prospect of an immediate execution of the state district court judgment against her, turned to a federal forum. (Under R.I.G.L. § 9–12–12, the appeal bond must be filed with the court or no notice of appeal will be processed; absent a valid appeal, the eviction judgment will become final; and, unless an appeal stays its effect, the lessor may execute upon the district court judgment.) An emergency hearing was held on March 21, 1986. This court, in order to preserve the status quo, entered a limited restraining order (i) requiring that rent be paid on a current basis, (ii) enjoining Van Eyk from executing upon the state district court judgment, and (iii) mandating that the clerk of the state district court take no action either to reject or to process plaintiff's notice of appeal pending the entry of a further (federal) order. This court announced its intention to schedule a hearing on preliminary injunction within one week.

The need for such a session was, however, averted. The parties stipulated to the critical facts, acquiesced in the merger of preliminary injunction with merits adjudication, *see* Fed.R.Civ.P. 65(a)(2), and waived their rights to present further evidence or arguments. The complete state court docket was made part of the instant record. The court invited the filing of briefs on or before the close of business on March 25 (later extended to March 26) and determined that priority attention should be given to the rendition of a decision.

## II.

The district court is the first tier of the state's trial court system and sits in eight divisions throughout the state. R.I.G.L. § 8–2–2. The tribunal is not a court of record and no jury trials are available. An appeal, in the nature of a trial de novo, is provided to the parties in the state superior court, as long as certain litigation costs are prepaid by the appellant. R.I.G.L. § 9–12–10.[1] A procedure exists to claim a jury trial in the superior court proceedings. R.I.R.Civ.P. 38.

The district court possesses exclusive jurisdiction over trespass and ejectment actions. R.I.G.L. § 8–8–3(a)(2).[2] Any defendant who desires to appeal the judgment in such an action must pay the aforementioned litigation costs required by R.I. G.L. § 9–10–10, and must also post bond "to pay all monies due, or which may become due pending the action under the tenancy, and such damages and costs as may be awarded against him...." R.I. G.L. § 9–12–12.[3] The amount of the bond is fixed by the district court on a case-by-case basis. The state district judge is not at liberty to waive the bond requirement. *Jones v. Aciz*, 109 R.I. 612, 289 A.2d 44, 52 (1972), *appeal dismissed sub nom, Phil-*

*lips v. Housing Authority of the City of Providence*, 409 U.S. 1094, 93 S.Ct. 704, 34 L.Ed.2d 678 (1973) (upholding constitutionality of § 9–12–12). *See also Walka v. Bestwick*, 115 R.I. 38, 340 A.2d 115, 117 (1975) (language of § 9–12–12 "clear and unambiguous"). *Cf. Raptakis v. Chase*, 120 R.I. 1009, 392 A.2d 932 (1978) (dismissing appeal for failure to post bond). Section 9–12–12 is, in one sense, in aid of other statutory provisions which command that a tenant who continues in occupancy during the pendency of an appeal pay the rent as it becomes due. *See* R.I.G.L. §§ 34–20–7, 34–20–8. Failure to do so entitles the landlord to judgment and execution. *Bove v. Kates Properties, Inc.*, 444 A.2d 193, 195 (R.I.1982).

## III.

Oaks claims that the necessity of an appeal bond as a condition precedent to her access to the superior court abridges her constitutional right to a jury trial under the Due Process Clause of the fifth and fourteenth amendments to the United States Constitution. She further alleges that the bond requirement infringes her right to equal protection of the law as guaranteed by the fourteenth amendment.[4] Both argu-

---

**1.** R.I.G.L. § 9–12–10 provides:

Claim of appeal of [sic] superior court.—Except as otherwise provided, in all civil cases in the district court, any party may cause such case to be removed for trial on all questions of law and fact to the superior court for the county in which division the suit is pending, by claiming an appeal from the judgment of the district court, in writing, filed with the clerk of said division within two (2) days exclusive of Saturdays, Sundays and legal holidays after the judgment is entered; Provided, That the party claiming such appeal, at the time of claiming the same, shall pay to the clerk all costs including an attorney's fee of fifty dollars ($50.00) for the party or parties adversely interested in the judgment, to be paid by the clerk to the attorney for such adverse party. Said attorney's fee of fifty dollars ($50.00) shall be divided equally among the attorneys for the parties adversely interested when more than one adverse party is involved; and Provided, further, That costs shall not be taxed, exclusive of said attorney's fee, at a sum not less than twenty-five dollars ($25.00).

**2.** R.I.G.L. § 8–8–3(a)(2) states: "The district court shall have exclusive original jurisdiction of ... All actions for possession of tenements or estates let or held by will or sufferance...."

**3.** R.I.G.L. § 9–12–12 declares::

Appeal bond of defendant in action for possession of tenements let.—Every defendant in an action for the possession of tenements let or held at will or by sufferance, claiming an appeal, shall, in addition to making the payments required by § 9–12–10, give bond to the plaintiff, with one or more sureties satisfactory to the district court, to pay all rent or other moneys due, or which may become due pending the action under the tenancy, and such damages and costs as may be awarded against him, such bond to be filed with the clerk of the district court, or person acting as clerk, at the time of claiming an appeal.

**4.** In her complaint, the plaintiff also alleges that R.I.G.L. § 34–20–7 (requiring the payment of rent during the pendency of an appeal) is unconstitutional. However, she now asserts that she "does not quarrel with" the strictures of

ments hinge on her impecunious financial status. She therefore sues under 42 U.S.C. § 1983, invoking this court's federal question jurisdiction. 28 U.S.C. § 1331. Oaks seeks a declaration that the appeal bond requirement is unconstitutional, coupled with injunctive relief affording her the right to prosecute her state court appeal. In effect, she beseeches the federal courts, as the ultimate arbiters of the reach of the federal Constitution, to vitiate the state supreme court's endorsement of § 9–12–12 announced in *Jones v. Aciz, supra.*

## IV.

As noted, the plaintiff asserts that the state's requirement of an appeal bond in her case violates, first, her right to a jury trial and second, her right to appeal, all as guaranteed (in her view) pursuant to the due process and equal protection clauses of the federal Constitution. *See ante* Part III. The matrix for decision thus contains four quadrants: each claim must be analyzed separately and within that analysis, each must be subjected to both due process and equal protection scrutiny.

### A. *Trial By Jury*

 Oaks claims that the operation of R.I.G.L. § 9–12–12 transgresses due process in her circumstances, thereby giving rise to a cause of action under 42 U.S.C. § 1983. One of the essential elements required in order to maintain a § 1983 claim, however, is that a litigant must allege and show deprivation of a right "secured by the Constitution and laws of the United States." *Flagg Brothers, Inc. v. Brooks,*

436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). It is well established that the federal right to a jury trial in civil cases, provided by the seventh amendment to the federal Constitution, is not applicable to the states. *See Woods v. Holy Cross Hospital,* 591 F.2d 1164, 1171 n. 12 (5th Cir.1979); *Wartman v. Branch 7, Civil Division County Court, Milwaukee County, State of Wisconsin,* 510 F.2d 130, 134 (7th Cir.1975).

Though couching her claims in bold declarations and perfervid rhetoric, Oaks offers not a shred of respectable authority for the proposition that the right to a jury trial in civil cases is safeguarded by federal due process precepts. The plaintiff's flagship precedent in this regard, *Lucky Ned Pepper's Ltd. v. Columbia Park and Recreation Association,* 64 Md.App. 222, 494 A.2d 947 (1985), is inapposite. The court in *Lucky Ned* held that a state summary eviction proceeding requiring past-due accrued rents to be paid into escrow was unconstitutional under a provision of the Maryland Declaration of Rights, which provided for the right to trial by jury. *Id.* 494 A.2d at 950. Federal due process concerns were not discussed by the Maryland court in connection with plaintiff's putative jury trial rights.[5] *Lucky Ned* is an unlucky—and unlikely—choice as a buttress to Oaks's due process assertion here.

A second authority relied upon by the plaintiff in her constitutional foray, *Lecates v. Justice of the Peace Court Number 4 of the State of Delaware,* 637 F.2d 898 (3d Cir.1980), likewise lacks any cutting edge in reference to the case at bar. Although

---

§ 34–20–7. Plaintiff's Memorandum in Support of her Motions for a Temporary Restraining Order and Preliminary Injunction at 3 n. 1. It is well settled that claims raised but not thereafter briefed or argued are deemed to have been abandoned. *United States v. Kobrosky,* 711 F.2d 449, 454 (1st Cir.1983); *A & H Manufacturing Co. v. Contempo Card Co.,* 576 F.Supp. 894, 896 n. 1 (D.R.I.1983). Thus, the purported unconstitutionality of § 34–20–7 is not properly before the court and will not be considered.

**5.** The *Lucky Ned* court did hold that the Maryland statute was violative of the due process protection provided by the fourteenth amendment to the United States Constitution in one

respect. *Id.* 494 A.2d at 953. Specifically, this finding was based on the summary nature of the Maryland eviction process, resulting in the lack of an opportunity to be heard prior to the alleged deprivation. *Id.* 494 A.2d at 954–56. Such procedural due process concerns are not raised in the case at bar. The trial afforded by Rhode Island's district court system before issuance of a judgment of ejectment complies fully with the due process requirement that Oaks be heard in advance of the deprivation "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

the *Lecates* court held that a surety bond requirement, as a necessary adjunct to appeal a decision from the justice of the peace court in Delaware, violated plaintiff's due process rights, the decision is plainly distinguishable.

In *Lecates*, the Third Circuit was rightfully concerned with the quality of the judicial process in the justice of the peace courts in Delaware. *Id.* at 901. These courts are traditionally presided over by individuals with no legal training. *Id.* This fact, to a great extent, convinced the court that the appellant had not received a suitable opportunity meaningfully to be heard in advance of the deprivation. *Id.* at 909. To draw any parallel between that situation and the Rhode Island scene is an affront both to the Rhode Island judiciary and to common sense. Rhode Island's first-tier proceedings are governed by well-trained and neutral magistrates. The governor, with the advice and consent of the state senate, appoints the judges of the district court, who thereafter possess life tenure "during good behavior." R.I.G.L. § 8-8-7(a). All judges of the state district court are required to be members of the state bar. R.I.G.L. § 8-8-7(b). All serve as full-time judicial officers. R.I.G.L. § 8-8-7(c). Although the outcome of the proceedings in the Eighth District Court was not to Oaks's liking, she cannot plausibly complain about the fairness of the protocol. Her claim of entitlement to continued occupancy of the apartment was heard by a trained, neutral, independent magistrate in a proceeding controlled by rules of evidence and conducted in conformance with law. Whatever informalities may have infected Delaware's method of affording first-tier access to the judicial system have not migrated north to Rhode Island.

The Third Circuit's decision is off the present point for other reasons as well.

For example, the *Lecates* court was not dealing with a trespass and ejectment action, a type of action which the Supreme Court has indicated may trigger special legislative concerns. *See Lindsey v. Normet*, 405 U.S. 56, 77–78, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972) (court recognizes and defers to Oregon's legislative judgment that landlord/tenant actions were rationally distinguishable from other debtor-creditor relations). At bottom, *Lecates* does not detract from the validity of the paradigm created by the Rhode Island General Assembly.

■ In fine, Oaks has totally failed in her rather lame effort to withdraw this case from the general rule. *See Woods, supra; Wartman, supra.* Procedural due process, as guaranteed by the federal Constitution, in no way dictates that this plaintiff be ceded any entitlement to a jury trial in a civil eviction proceeding. As the Court has consistently recognized, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Though arguably imperfect in the best of all possible worlds, the Rhode Island scheme represents a reasoned—and reasonable—response to the peculiar crosscurrents which ebb and flow in the eviction stream.

■ A substantive due process claim must also fail. Although the Supreme Court has examined "right to access" cases under a substantive due process analytical framework, *Boddie v. Connecticut*, 401 U.S. 371, 374–83, 91 S.Ct. 780, 784–88, 28 L.Ed.2d 113 (1971), none of the Court's decisions hold that the right to a civil jury trial embodies fundamental interests.[6] When no such rights are implicated, the

---

**6.** As a matter of passing interest, it is well to note that the Rhode Island Supreme Court has specifically held that the requirement of a bond in a trespass and ejectment action does not deprive the defendant of the right to a jury trial provided by Article I, Section 15 of the state constitution. *Mathewson v. Ham*, 21 R.I. 311, 43 A. 848 (1899). The highest tribunal of a state

is, of course, the best (and ultimate) authority on the extent of the safeguards which a state constitution insures. *North Carolina v. Butler*, 441 U.S. 369, 376 n.7, 99 S.Ct. 1755, 1759 n. 7, 60 L.Ed.2d 286 (1979) (United States Supreme Court must accept whatever construction of a state constitution is articulated by the highest court of the state).

Court has examined—and frequently upheld—financial barriers under a rational basis test. *United States v. Kras*, 409 U.S. 434, 443–48, 93 S.Ct. 631, 636–39, 34 L.Ed.2d 626 (1973) (filing fee to obtain discharge in bankruptcy does not impinge on indigent's due process rights); *Ortwein v. Schwab*, 410 U.S. 656, 662–66, 93 S.Ct. 1172, 1175–77, 35 L.Ed.2d 572 (1973) (filing fee to obtain judicial review of administrative reduction in welfare benefits does not violate due process). The administration of an orderly system of justice does not envision that every prospective litigant can rove at will throughout the courts, arrogating unto herself whatever anodynes may catch her fancy. Reasonable rules are, for obvious reasons, both necessary and desirable. And, Rhode Island's bond requirement in eviction actions is a judicious response to a myriad of dangers: primarily, the unwarranted hampering of the landowner's property rights. The state has not only a right, but indeed a responsibility, to strike a balance between a tenant's undisturbed occupancy of her dwelling and a landlord's legitimate use and enjoyment of the property which he has bought and paid for. Rhode Island's statutory effort to hold the balance of these competing concerns steady and true admittedly treats the owner's property rights as the paramount interest. But, the Constitution does not debar a state from making such a choice, so long as it is not an arbitrary one. The Rhode Island formulation, while not the only constitutionally allowable solution, is a rational one and is adequate to withstand this facet of the plaintiff's challenge.

Plaintiff's argument as regards the right to a jury trial must likewise fail under an equal protection analysis. Oaks claims that the right to a jury trial provided by the Rhode Island Constitution, Art. I, § 15,[7] is denied to her solely because of her indigency. This classification, her thesis runs, denies her equal protection of the law. The state's rejoinder, of course, is that it does not discriminate between poor tenants and affluent ones: all are treated exactly the same, and all have recourse to a jury trial upon the posting of the requisite indemnity against incremental losses to the landlord.

There is a threshold matter which must be crossed as this issue is approached: what form of legal protection analysis should be utilized here? The Supreme Court has held that the right of access to the courts implicates a fundamental interest and cannot be denied to litigants "on account of their poverty, unless the state has a compelling interest." *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed.2d 891 (1956) (indigent criminal defendant cannot be denied right to appeal). The asserted right to a civil jury trial, however, has never been found to constitute a necessary component of a meaningful litigation opportunity. Furthermore, no suspect classification has been identified such as would trigger a strict scrutiny/compelling state interest analysis. Poverty per se, however lamentable, is not a suspect classification for the purposes of equal protection. (Although the Supreme Court has invalidated state laws which discriminated de facto against the poor, it has done so only where those laws have also abridged some (other) *fundamental* interest of an individual. *See, e.g., Boddie*, 401 U.S. at 374–83, 91 S.Ct. at 784–88.) Inasmuch as the right to a civil jury trial is not a fundamental one in the federal constitutional lexicon, the rational basis test must be used to determine the constitutionality of R.I.G.L. § 9–12–12 in the face of an equal protection challenge.

This criterion requires only "some rationality in the nature of the class singled out." *Rinaldi v. Yeager*, 384 U.S. 305, 308–09, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966). Rationality, in turn, must be measured by the ability vel non of the classification to serve the purpose intended by the legislative or administrative rule. *McLaughlin v. Florida*, 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964). The statute sub judice, as the state argues, creates no "rich" versus "poor" taxonymy;

**7.** Article I, § 15 provides that "the right of jury trial shall remain inviolate."

its basic stratification is in terms of which party has (or has not) prevailed at a full-dress trial below. Tenants whom the state district court has adjudged to be entitled to continued occupancy (whether wealthy or impecunious) are not affected by the rigors of § 9–12–12; all others must abide by the statutory command.

There is at least one rational basis which adequately supports the General Assembly's desire to require an appeal bond in trespass and ejectment actions under R.I.G.L. § 9–12–12. It cannot be gainsaid that the state has a valid interest in protecting rights of property owners vis-a-vis the use and enjoyment of their property. *See Lindsey*, 405 U.S. at 76–78, 92 S.Ct. at 875–76 (court defers to Oregon's legislative judgment that landlord/tenant actions are rationally distinguishable from other debtor-creditor relations). That interest is heightened in dealing with landlords who have already carried the day in a fair trial in the state district court.

It is no answer at all to say that a landlord can be assured of the receipt of ongoing rent on a current basis by less restrictive means: such a flip response addresses neither the reality that the rent paid by the present tenant may be well under market (after all, a frequent cause for eviction, second only perhaps to non-payment of rent, is that the owner spies a more remunerative use for his property) nor the fact that a tenant who has become her landlord's litigation adversary and who teeters on the brink of eviction is peculiarly apt to cause—or at least not to deter—the commission of waste. Landlords have rights just as do tenants, and the state must weigh and balance both sets of entitlements in the formulation of legislative judgments. If the competing concerns are genuine and the end-product of the legislative alchemy rationally responds to the problem, it is not for a federal district court

to insist on a different ordering of priorities as a matter of governmental policy.

Doubtless, other bases could, as the defendants have argued, be hypothesized, yet to do so would be supererogatory. The point is that the appeal bond requirement of § 9–12–12 passes equal protection muster when that analysis is tied to the perceived right to a jury trial. R.I.G.L. § 9–12–12 does not transgress the plaintiff's constitutional due process and equal protection rights because of its supposed impact upon her accessibility to a trial by jury.

### B. *Right to Appeal*

Oaks claims that R.I.G.L. § 9–12–12 violates her right to appeal as protected by the due process and equal protection clauses of our nation's constitution. Her argument, in essence, is an imprecation that § 9–12–12 deprives her of fair access to the court system. Although the asseveration is made separate and distinct from her jury riposte, *see ante* Part IV(A), it is, at least on due process grounds, swaddled in the same sheets. After all, if a "full and fair trial on the merits" has been afforded, the Due Process Clause does not command a state to furnish *any* appellate review. *Lindsey*, 405 U.S. at 77, 92 S.Ct. at 876. And, the only infirmity in the Eighth District Court trial which Oaks has singled out is the unavailability of a jury.[8]

Once again, the threshold issue is the method of analysis to be employed. It is not uncommon that "right of access" cases touch upon an admixture of due process and equal protection concerns. *E.g., Boddie*, 401 U.S. at 374–83, 91 S.Ct. at 784–88. Yet, whether viewed as an exercise in procedural or substantive due process or in equal protection, a rational basis test should be utilized. Neither a fundamental right nor a suspect classification, as the parameters of those terms have been delineated by the Supreme Court, is implicated.

---

**8.** The Equal Protection Clause may nonetheless be implicated if appellate rights are ceded to some litigants and not to others, based on an impermissible classification. *Cf. Douglas v. Cal-* *ifornia*, 372 U.S. 353, 357–58, 83 S.Ct. 814, 816–17, 9 L.Ed.2d 811 (1963) (state required to provide counsel for indigent on appeal in criminal case).

In this regard, *Lindsey* is particularly instructive. In that case, the Court's equal protection inquiry was posited in terms of the rational basis test in scrutinizing an Oregon appeal bond requirement which operated, as does R.I.G.L. § 9–12–12, as a prerequisite for appealing a trespass and ejectment action. *Lindsey*, 405 U.S. at 74–79, 92 S.Ct. at 874–77. In discussing the bond condition, the Court observed that "[a] state may properly take steps to insure that an appellant post adequate security before an appeal to preserve the property at issue, to guard a damage award already made, or to insure a landlord against loss of rent if the tenant remains in possession . . . ." *Id.* at 876–77. This is precisely what R.I.G.L. § 9–12–12 accomplishes. It is a constitutionally acceptable response to a significant societal problem.

Further evidence of the constitutionality of the Rhode Island statute is found in the *Lindsey* Court's (favorable) comparison between Oregon's unconstitutional "double bond" requirement [9] and a permissible "single bond" requirement of the genre which Oregon utilized in non-eviction settings. *Id.* at 74–79, 92 S.Ct. at 874–77. This latter (constitutional) stipulation is, in actuality, almost a mirror image of R.I.G.L. § 9–12–12.

A state is not powerless to distinguish between standard appeal bond requirements in run-of-the-mine actions and more custom-tailored requirements in the trespass and ejectment setting; there is no rule that such disparities are per se invalid. The Rhode Island General Assembly, has chosen to make a distinction in this regard: in the usual appeal from the district court to the superior court, the appellant must only pay certain litigation costs, R.I.G.L.

§ 9–10–10, but eviction proceedings necessitate the posting of an appeal bond pursuant to R.I.G.L. § 9–12–12 as well. The "special characteristics of the landlord-tenant relationship," *Lindsey*, 405 U.S. at 78, 92 S.Ct. at 877, fully warrant some degree of differentiation. The *Lindsey* Court eschewed any condemnation of the Oregon scheme based on the mere disparity between the two sets of bond requirements; rather, the Court struck down the eviction double bond provision on the ground that it bore "no reasonable relationship to any valid state objective" and arbitrarily discriminated against tenants appealing from adverse decisions in trespass and ejectment actions. *Lindsey*, 405 U.S. at 76–77, 92 S.Ct. at 875–76. Yet, the Court took pains to recognize the propriety of distinguishing between the types of actions for appeal-access purposes. *See id.* at 76, 92 S.Ct. at 875. So, the lesson to be learned from *Lindsey* is that, while a state is free to address the idiocratic set of concerns which dot the landlord-tenant landscape in ways uniquely crafted to meet the exigencies of those situations, the mode of address must bear a reasonable relationship to the valid governmental interests which are entailed.

In characterizing the state statutory scheme here at issue as "arbitrary," the plaintiff is whistling past the graveyard. Bond requirements have historically been used to balance equities, and to hold the tension between competing litigants straight and true. *Cf.* Fed.R.Civ.P. 62(d) (requiring supersedeas bond for stay on appeal); Fed.R.Civ.P. 65(c) (requiring "security . . . for the payment of . . . costs and damages" incident to the issuance of injunctive relief).[10] To interdict a state's

---

**9.** Plaintiff also cites other federal cases for the proposition that R.I.G.L. § 9–12–12 violates her constitutional rights. Like *Lindsey*, however, these cases deal with state statutes requiring "double bond" penalties. *See Usher v. Waters Insurance Realty Co., Inc.*, 438 F.Supp. 1215, 1219 (W.D.N.C.1977) (three month rent bond coupled with double rent penalty); *Graham v. Albuquerque Realty, Inc.*, No. 9808, slip op. at 12 (D.N.M. Dec. 28, 1973) (automatic assessment of unproved double damages should appeal be lost). Those cases provide no helpful analogies

in the Rhode Island context. In the situation at bar, the state has sought only to protect the owner's property and/or the meaningfulness of a subsequent damage award in his favor rather than, as in *Usher* and in *Graham*, punishing the tenant for taking an appeal by automatically doubling the stakes.

**10.** The Rhode Island Supreme Court, at the turn of the century, traced the lineage of surety bonds in eviction proceedings to the reign of

power to maintain a desirable balance in this respect because of an unsuccessful litigant's broken fortunes requires placing the federal judicial thumb far too heavily on the scales of justice. (Indeed, once one accepts the notion that bond requirements may be validly imposed at all—a proposition so abecedarian that even Oaks does not seriously argue the contrary—the need for a bond is at the zenith in a case where, as here, the plaintiff's poverty reduces the landlord's prospect of eventually recovering just damages, in the absence of security, to near zero.) If, as *Lindsey* teaches, a state may validly differentiate between types of actions in fashioning bond requirements for appeal, then R.I.G.L. § 9–12–12 must be viewed as passing constitutional muster (on both due process and equal protection grounds) under a rational basis standard. *See ante* Part IV(A).

In mounting her challenge, the plaintiff places considerable weight on the Second Circuit's recent consideration of the constitutionality of a supersedeas bond rule in *Texaco, Inc. v. Pennzoil Company,* 784 F.2d 1133 (2d Cir.1986). *Texaco,* however, cannot bear the brunt of the burden which Oaks assigns to it. To be sure, the Second Circuit did hold that the Texas supersedeas statute, which required the appellant to post bond in the amount of the money judgment against it in order to stay execution pending appeal, was unconstitutional. Nevertheless, the court of appeals carefully noted that its decision should "obviously" be read as a narrow one both in scope and application. The panel candidly conceded that certain "extraordinary circumstances of the case, which are unlikely ever again to recur," bottomed the *Texaco* result. Perhaps most significant for the purposes at bar, the court observed that the appellant, while unable to post sufficient bond (the judgment in the trial court, after all, was for more than 11 billion dollars, and far exceeded the aggregate bonding capacity of all operating surety companies collectively), could nonetheless be expected to satisfy the judgment if its merits appeal

failed. (The parties conceded that Texaco's net assets enjoyed a liquidation value of roughly twice the amount of the judgment.) No such assurance can credibly be proffered in the case at bar. Here, Oaks's difficulty in launching her appeal under the state's mosaic is fully matched by the landlord's difficulty in protecting his rights absent the bond requirement. The plaintiff is, by her own admission, indigent. If Van Eyk, during the period of the appeal, loses rental opportunities or suffers losses by, say, waste or mischief, he will bear those misfortunes in full without realistic hope of recoupment. So, with these twin dilemmas in focus, it would be an improper usurpation of legislative prerogatives to attempt judicially to reshape the General Assembly's resolution of the conflict.

The remaining authorities cited by the plaintiff are similarly unpersuasive. Some involve criminal, as opposed to civil, proceedings. *E.g., Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Some turn on questions of statutory interpretation. *E.g., Thompson v. Mazo,* 421 F.2d 1156 (D.C.Cir.1970). Others deal with statutes or rules which, unlike Rhode Island's, specifically confer discretion upon the court to consider a litigant's financial resources (or the absence thereof). *E.g., Aggarwal v. Ponce School of Medicine,* 745 F.2d 723 (1st Cir.1984). Although it is certainly possible, as this case proves, that astute counsel can derive kernels of sustenance from isolated passages in these opinions, the fact remains that none casts any heavy shadow of doubt on the bona fides of the procedure which Rhode Island has adopted in this instance.

The Rhode Island statute works two essential stratifications: it distinguishes between tenants who prevail in the first-tier state district court proceedings, and those who do not; it likewise distinguishes between eviction cases and other civil actions. Both distinctions are rationally related to the state's legitimate governmental interests. And, the fact of Oaks's poverty,

George II. *Mathewson,* 21 R.I. at 315–16, 43 A. 848.

though distressing, makes no constitutionally significant difference.

### V.

This court is not so naive as to believe that indigent persons are not disadvantaged in certain respects in civil litigation. As one enters and proceeds through the judicial system, money may make a difference: wealthier suitors may be able to engage more talented lawyers, to afford more intensive legal research, to investigate relevant matters more thoroughly, to withstand the rigors and delays of litigation more easily, to prosecute additional appeals irrespective of expense. Yet, there is no principled way, in a free and democratic society which has thrived on concepts of capitalism, that absolute parity can be achieved. Nor is such parity constitutionally required in the litigation of disputes between private parties. The Constitution quintessentially demands that the several states, in establishing the rules of the game, do so in a fair and neutral fashion, that government insure against the domination of the process by the forces of invidiously discriminatory conduct, and that the fundamental rights of all persons, no matter how destitute, be adequately protected. The Constitution requires that deserving cases be fairly heard and determined, and minimizes the most egregious disparities between rich and poor. But the power of the purse, though lessened, has not been totally devalued. Justice is dollar-blind; the incidents of litigation are not. In a system which honors property rights side by side with personal liberties, such a result is inevitable.

In respect to matters cognizable under state law, the federal Constitution most often permits the states to exercise discretion in fashioning choices, insisting only that inalienable rights not be trampled and that fundamental interests not be abridged. *See Addington v. Texas*, 441 U.S. 418, 431, 99 S.Ct. 1804, 1812, 60 L.Ed.2d 323 (1979) ("The essence of federalism is that states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold.") Procedures may vary so long as they meet the constitutional minima. In adopting the mechanism by which its courts handle trespass and ejectment actions, Rhode Island has made its choices. To be sure, those choices impose some (regrettable) hardship on indigent tenants, but that hardship results not from any impermissible tilt in the statutory scheme, but from the need to balance tenants' rights with the (equally sacrosanct) rights of others. Landlords, too, have legally protectible interests.[11]

A federal district court sits in judgment of a state's fidelity to the tenets of the Constitution, not as a super-legislature invested with the power to defuse rational legislative initiatives by deferring to judge-made concepts of social policy. The judiciary has no monopoly on sociological wisdom. So long as the state has chosen a format which meets the federal constitutional minimum—and Rhode Island has done so in this area—this court cannot in conscience interfere. The Rhode Island plan for the administration of justice in regard to landlord/tenant litigation, taken in its totality, does not invade the penumbras of either the Due Process Clause or the Equal Protection Clause.

The court regrets that temporal exigencies, the delicate (and time-critical) balance between the rights of the parties, and the spectre of unwarranted federal intrusion into the operation of the state court system combine to counsel against more exegetic treatment of the salient issues raised by this suit. Nevertheless, the result which must obtain is clear: R.I.G.L. § 9–12–12 stands impervious to Oaks's constitutional assault. Having reached that conclusion, the importance to the parties of a prompt decision in this proceeding far outweighs whatever value might attach to a fuller

---

**11.** It is self-evident that if the Rhode Island General Assembly had made its choice in a manner more palatable to indigent tenants, it would thereby have produced a counterbalancing distortion in the degree of prophylaxis accorded to landlords' rights.

exposition of the underlying constitutional principles.

The court declares that R.I.G.L. § 9–12–12 is not constitutionally infirm in manner and form as Oaks has alleged. The plaintiff is not entitled to prevail on the merits of her suit. Her complaint is, therefore, denied and dismissed. The clerk is directed to enter judgment for the defendants (no costs). The temporary restraining order heretofore issued is dissolved. Although this court does not believe that the issues are sufficiently close, or the likely harm to the landlord sufficiently slight, to warrant any extended stay of this edict, *see Chang v. University of Rhode Island*, 107 F.R.D. 343, 344 (D.R.I.1985) (discussing generally criteria for stay of judgment pending appeal), the court will postpone the dissolution of the injunction until 12:00 noon on April 7, 1986 in order to permit the plaintiff a reasonable opportunity to seek an appellate stay.

*So ordered.*