[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Pursuant to G.L. (1956) § 34-18.1-9(b)(4), this matter is before the Court on the appeal of Poncelet Investment Associates, Elizabeth B. Dias and Joanne B. Lowe ("Plaintiffs") from a decision of the District Court, Third Division. The District Court entered judgment for L/M TacoRI, Inc. ("Defendant" or "TacoRI") and denied the Plaintiffs' request to move forward with commercial eviction proceedings and recover possession of the subject premises. Jurisdiction is pursuant to G.L. (1956) § 9-12-10.
 Facts and Travel
The parties have stipulated to the vast majority of material facts.[1] In 1978, Philomen (Felix) Poncelet owned property located at 877 Bald Hill Road in the City of Warwick, Rhode Island ("Premises"). On September 27, 1978, Felix Poncelet executed a lease agreement ("Lease") for the Premises with South Isle Food Corporation. The Lease provided for an initial twenty-year term to commence on January 1, 1979 and terminate on December 31, 1998. See Lease § 2.1. South Isle Food Corporation used the Premises to operate a Wendy's Old Fashioned Hamburger Restaurant until April 1998 when it assigned the Lease to the Taco Bell Corporation. Taco Bell Corporation — located in Irvine, California — is a subsidiary of Yum! Brands, Inc. that handles franchising Taco Bell Restaurants throughout the United States. On April 28, 1998, the Defendant became the successor tenant under the Lease pursuant to an assignment from Taco Bell Corporation. Jt. Tr. Stip. ¶ 2 (Apr. 14, 2005). At the time of the assignment, Ruth Poncelet ("Poncelet") had become the successor landlord after the death of her husband in January 1991.[2]
The parties agree that they operated under a somewhat informal landlord/tenant relationship and did not always technically comply with the formal requirements of the Lease — particularly with respect to written correspondence. Lease §§ 25, 26 state that both the landlord and the tenant must send any and all required `notice' via certified or registered mail.[3] `Notice' which requires regular or certified mailing includes — but is not limited to — rent, change of address, and/or an intent to exercise option to renew Lease term. Despite the specificity of the Lease provisions, the parties concede that they sent all correspondence by regular mail not registered or certified. Tr. Transcr. of April 14, 2005 at p. 41 lls. 4-7; Tr. Transcr. of May 25, 2005 at p. 43 ll. 9-11.
On June 2, 1998, Poncelet telephoned Roger Lockwood,[4]
the President of L/M Taco RI, Inc., to notify him that her mailing address had changed and to request that future correspondence be sent to 155 Pine Glen Drive, East Greenwich, RI 02818. Jt. Tr. Stip. ¶ 4. Additionally, she inquired whether Lockwood could deposit future rental payments for the Premises directly into her bank account. Id.
Lockwood testified that he made a written notation of the address change and directed his bookkeeper to mail future rental payments to the Pine Glen address. Id. at ¶ 5. Although the bookkeeper entered the change in her database of addresses, Lockwood testified that he failed to enter the address change in either his lease digest or his personal database. Tr. Transcr. of May 25, 2005 at page 18, ll. 13-25.
After an unsuccessful attempt to effectuate the direct deposit of rental checks, Lockwood sent Poncelet a letter, dated June 12, 1998, to advise her that the bank had internal obstacles which prevented direct deposit. Jt. Tr. Stip. ¶ 6. Lockwood sent this correspondence to the Pine Glen address. Id. In addition to the June 12th letter, Lockwood's bookkeeper sent all future rent payments to the Pine Glen address beginning with the July 1998 rent. On the check, the payee was listed as: "Ruth D. Poncelet et al., 155 Pine Glen Drive, East Greenwich, RI 02818."
The informal relationship between Poncelet and the Defendant continued without incident until April 1999. At that time, Poncelet consulted with her attorney to organize her estate. When the attorney examined the Lease for the Premises, he questioned Poncelet as to § 2.3 which granted the Defendant — as the successor tenant to South Isle Food Corporation — an option to extend the Lease for eight (8) successive periods of five (5) years each. Poncelet conceded that she was unaware both that the twenty-year term had expired and that Lockwood had to provide notice to her to exercise an option to renew. Tr. Transcr. of Apr. 14, 2005 at p. 19 ll. 5-22.
In order to exercise the first option covering the period from January 1, 1999 through December 31, 2003, the tenant had to give "landlord written notice at least ninety (90) days prior to the expiration of the initial term or extended term hereof." Lease § 2.3. Accordingly, Lockwood had to exercise the option to renew the Lease by September 30, 1998. The Defendant contends that it mailed a notice of intent to Poncelet to exercise its option on August 5, 1998. However, the Defendant concedes that it mailed the notice to the former address, 846 Division Street, East Greenwich, RI. Tr. Transcr. of May 25, 2005 at p. 15 ll. 16-17. Furthermore, the Defendant admits that it sent the notice by regular mail — not registered or certified.Id. at p. 12 ll. 5-11. In addition, on September 18, 2003, the Defendant sent the Plaintiffs a notice to exercise a `second option' period that would purportedly run from January 1, 2004 until December 31, 2008.
Nevertheless, Poncelet testified that she never received any notice from the Defendant which exercised the option to renew the Lease. Consequently, on August 20, 1999, Poncelet sent a Notice of Termination of Tenancy to the Defendant via regular mail, not certified or registered. Jt. Tr. Stip. ¶ 10. However, she did continue to accept rental payments including rent increases in accordance with the rent schedules contained in the Lease. The Defendant paid rent in the amount of $2466.66 for the period from January 1, 1999 through December 31, 2003 and $2633.33 for the period from January 1, 2004 through the present. See Lease Rent Schedules.
During the course of proceedings before the District Court, Poncelet passed away on September 10, 2002. Consequently, on November 27, 2002, the District Court granted the Plaintiffs' motion to substitute the successors in interest of the Premises — Poncelet Investment Associates, L.P. and general partners Elizabeth B. Dias and Joanne B. Lowe — as the proper Plaintiffs. On October 27, 2004, the trial justice of the District Court entered judgment for the Defendant and against the Plaintiffs. On October 28, 2004, the Plaintiffs timely appealed.
In the interest of judicial economy, the parties proposed and the Court agreed to bifurcate the issues presented. Accordingly, in this first phase, the Court will address the relatively narrow issue of whether the Defendant effectively exercised the option to renew the Lease for the five-year period from January 1, 1999 until December 31, 2003. In the event the Court concludes that the Defendant failed to technically comply, the Court will then consider the second portion of the issue — whether the Defendant can successfully assert an equitable estoppel claim.
 Standard of Review
Pursuant to § 34-18.1-9(b)(4), a party aggrieved by a district court ruling in a commercial eviction proceeding may file an appeal to the Superior Court. "The district court is the first tier of the state's trial court system and sits in eight divisions throughout the state. The tribunal is not a court of record and no jury trials are available." Oaks v. District Court of RhodeIsland, 631 F. Supp. 538, 542 (D.R.I. 1986) (internal citations omitted). Without the benefit of a record of the district court proceedings, the justice of the Superior Court conducts a trial de novo on all issues of law and fact. See § 9-12-10. "The availability of a hearing de novo at the Superior Court level clearly grants an appellant the right to have the Superior Court justice use his [or her] independent judgment in ruling on the merits of the case." Downtown Group v. Tine,769 A.2d 621, 622 (R.I. 2001) (quoting Finney OutdoorAdvertising Co. v. Cordeiro, 485 A.2d 910, 911 (R.I. 1984)).
On appeal, the Plaintiffs' argument is twofold. First, the Plaintiffs contend that the Defendant failed to comply with the method of notification required under the Lease provisions by 1) sending notice to the wrong address; and 2) failing to send the notice via registered or certified mail. Second, the Plaintiffs aver that Poncelet did not receive the letter allegedly sent by the Defendant. Consequently, they argue that commercial eviction proceedings are appropriate at this time, and they are entitled to take possession of the Premises.
Conversely, the Defendant argues that it did send notice of its intention to exercise the option to renew to Poncelet on August 5, 1998. Furthermore, the Defendant argues that the continued acceptance of rental payments by Poncelet and/or the Plaintiffs — including the increases according to the schedule — constitutes waiver of the notice provision in Lease § 2.3.
Because the parties stipulated to the bulk of material facts, the only factual determination before the Court is whether Poncelet timely received the notice that the Defendant claims it dispatched on August 5, 1998 thereby exercising its option to renew the Lease term for the period from January 1, 1999 through December 31, 2003.
 Option Contracts
To properly exercise the option to renew for the five-year period from January 1, 1999 through December 31, 2003, the Lease required that the Defendant: 1) provide written notice of its intent to renew the Lease term; 2) address the correspondence to 155 Pine Glen Drive; and 3) send the notice via registered or certified mail. In addition, it is axiomatic that "an acceptance under an option contract is not operative until received by the offeror." Restatement (Second) of Contracts, § 63. Consequently, the Defendant had the affirmative duty to ensure that said notice reached Poncelet by September 30, 1998.[5]
Accepting the Defendant's representation that it dispatched written notice to Poncelet on August 5, 1998, it, nonetheless, failed to fulfill three of the four requirements under the Lease provisions. The deficiencies in the notice sent by the Defendant are inextricably linked.
First and most problematic, the Defendant concedes that it failed to dispatch the notice to the correct address. According to the Restatement (Second) of Contracts, "[a]n acceptance sent by mail or otherwise from a distance is not operative when dispatched, unless it is properly addressed and such other precautions taken as are ordinarily observed to insure safe transmission of similar messages." Restatement (Second) of Contracts, § 66 (1981). By failing to exercise due diligence in recording Poncelet's new address after receiving notification of the change, the Defendant must take responsibility for the consequences which resulted from dispatching correspondence to the incorrect address.
Second, the Defendant failed to send the correspondence by registered or certified mail. Although the testimony of the parties suggested that correspondence was typically sent via regular mail, such conduct does not alter the fact that a party who fails to send mail with certain assurance of its delivery runs the risk that the correspondence may not reach its intended recipient. Accordingly, the party who opts not to send the correspondence via registered or certified mail must accept the consequences of that risk.
Furthermore, the Defendant's lengthy arguments regarding waiver of the registered mail provision miss the analytical mark. If the alleged notice had timely reached Poncelet despite the improper dispatch, an argument could be made that said notice was sufficient to exercise the option notwithstanding its technical deficiencies. See Restatement § 67. However, the circumstances of the instant case do not support such an argument because there is no evidence to suggest that Poncelet ever received the alleged notice. Given Poncelet's testimony that she typically forwarded letters to her attorney upon receipt and the absence of any said notice in her lawyer's files, the Court finds that the weight of the evidence supports a factual finding that Poncelet never received the alleged notice.
Because an acceptance under an option contract is not effective until received by Poncelet, the Court need not belabor analysis of this point. Having determined that Poncelet never received notice of the Defendant's intention to renew the Lease for the period January 1, 1999 through December 31, 2003, the Defendant cannot sustain an argument that it effectively exercised its option in the manner required under the Lease § 2.3.
The Court will now briefly address the Defendant's remaining argument that the Plaintiffs waived the notice provision contained in § 2.3 by continuing to accept rent.
 Payment of Rent
It is well-settled that a landlord does not waive a lease provision requiring written notice of a lessee's intent to exercise an option to renew simply by accepting rent after the expiration of the original lease term. See Dyer v. Ryder Transportation Services,Inc., 765 A.2d 858, 860 (R.I. 2001) (citing Hudson OilCo. of Mobile, Inc. v. McLeod, 424 F.2d 1269, 1270 (5th Cir. 1970) ("waiver must be manifested in some unequivocal manner.")).
In Dyer, the plaintiff was a commercial landlord who brought a trespass and eviction action against a lessee. The terms of the lease accorded the lessee an option to renew which the lessee had to exercise no less than ninety (90) days prior to the expiration of the lease expiration. The parties agreed in writing to extend the option period for an additional thirty (30) days. Nevertheless, the defendant failed to timely exercise the option within the agreed-upon extended period. The Court rejected the defendant's argument that the plaintiffs' acceptance of rent constituted waiver of the notice provision and concluded that a lessee who fails to properly exercise an option to extend a lease and occupies the premises past the term of the lease becomes a holdover tenant. Id. at 860.
In a recent opinion addressing a slightly different factual scenario, the Rhode Island Supreme Court held that a plaintiff landlord is entitled to possession of the premises when the defendant lessee fails to timely exercise an option to extend a lease term. ElenaCarcieri Trust-1988 v. Enterprise Rent-A-Car Co.,871 A.2d 944, 949 (R.I. 2005). In Carcieri Trust-1988,
the Court rejected the defendant lessee's argument that because the plaintiff landlord accepted rental payments including rent increases dictated by schedules incorporated into the original lease, the plaintiff thereby waived the provision requiring the defendant to exercise notice. Although the dispute in CarcieriTrust-1988 primarily involved the interpretation of an ambiguous lease provision which delineated the applicable deadline for the exercise of the option, the import of the holding applies equally to the case at bar. Namely, a landlord does not waive notice provisions for the exercise of an option merely by accepting increased rental payments after the expiration of the original lease term.
Although the Defendant makes no reference to CarcieriTrust, it attempts to distinguish Dyer from the facts of the case at bar. The Defendant suggests that — in Dyer
— the continued acceptance of rent did not constitute waiver because the landlord notified the lessee immediately after the expiration of the option period of its intention to terminate the tenancy. Nevertheless, the Defendant ignores the fact that — in the instant case — the subject Lease contains a provision which specifically negates this alleged distinction. Lease § 2.4 explicitly states that: "[i]n the event the tenant continues to occupy the premises after the last day of the term hereby created, or after the last day of any extension of said term, and the Landlord elects to accept rent thereafter, a tenancy from month to month only shall be created and not for any longer period." Consequently, although the Defendant did not receive a notice of termination of tenancy until August 1999, Lease § 2.4 became operative immediately after the expiration of the original Lease term by transforming the Defendant from a lessee to a holdover tenant. Given the clear and unambiguous language of § 2.4 which established a holdover tenancy, the fact that Poncelet and/or the Plaintiffs continued to accept rent after the termination of the agreement did not waive the notice provision in the Lease.
After reviewing the applicable precedent and Lease § 2.4, the Court rejects the Defendant's argument that Poncelet and/or the Plaintiffs waived notice of intent to exercise the option by accepting increased rent. The Court finds that the Defendant's failure to timely exercise its option to renew the Lease effectively terminated the original agreement at the end of twenty-year term. As such, by continuing to occupy the Premises and pay rent, the Defendant became a holdover tenant as of January 1, 1999. Any subsequent attempt to exercise a `second' option period was of no avail because the original agreement terminated as a result of the Defendant's failure to timely exercise the option.
 Equitable Estoppel
Although the parties have not formally presented arguments to the Court regarding the issue of equitable estoppel, after measuring the evidence on the record against the standard for equitable estoppel, the Court finds no basis to support the invocation of such a claim.
The well-settled elements of equitable estoppel are (1) an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed directed to another; (2) made for the purpose of inducing the other to act or fail to act in reliance thereon; and (3) such representation or conduct must induce the other to act or fail to act to his detriment. See Ret. Bd. of the Employees Ret. Sys. ofR.I. v. DiPrete, 845 A.2d 270, 284 (R.I. 2004) (quotingProvidence Teachers Union v. Providence School Board,689 A.2d 388, 391-92 (R.I. 1997)). "The key element of an estoppel is intentionally induced prejudicial reliance." El Marocco Club, Inc. v. Richardson,746 A.2d 1228, 1233-1234 (R.I. 2000).
The Court is of the opinion that the Defendant cannot prevail on a claim for equitable estoppel. Before proceeding to an analysis of the equitable estoppel standard, the Court starts from the premise that the Defendant's failure to timely exercise the option to renew the Lease term is the impetus of the underlying trespass and eviction action and any subsequent result.
As to the first prong of the standard, the only two affirmative acts on the part of Poncelet were the acceptance of rent after the expiration of the Lease term and the request for increased rent in accordance with the original Rent Schedule. Lease § 2.4 specifically addressed the result of the failure to exercise the option, and provided that any continued acceptance of rent created only a holdover tenancy. Accordingly, Poncelet's continued acceptance of rent and/or increased rent cannot be classified as affirmative conduct intended to lull the Defendant into failing to exercise the option.
Similarly, the only `failure to act' would be Poncelet's failure to inform the Defendant that she had not received notice of its intent to exercise the option to renew the Lease term; however, "[m]ere nonaction is insufficient to justify an application of the doctrine."Ferrelli v. Department of Employment Sec., 261 A.2d 906,909 (R.I. 1970). "Silence . . . can be the basis for estoppel where there exists a duty not to remain silent as where the circumstances require one to speak lest such silence would reasonably mislead another to rely thereon to his detriment." Schiavulli v. School Comm.,334 A.2d 416, 419 (R.I. 1975). Under the terms of the Lease, Poncelet had no duty to notify the Defendant of her failure to receive notice. Consequently, Poncelet's `inaction' is insufficient to justify an application of equitable estoppel.
Next, the second and third prongs of the standard provide the fatal blows to the Defendant's attempt to invoke equitable estoppel. Although the Defendant will undoubtedly suggest that it must now either execute a new lease agreement which will result in the payment of increased rent or seek an alternative site to house its business, the Court is unpersuaded that the Defendant can attribute any such detriment to any action or inaction on the part of Poncelet. Conversely, the Court reiterates that any such detriment resulted from the Defendant's failure to timely exercise the option to renew. "An actor may not base a claim of estoppel in its favor upon its own wrongful acts." Wellington HotelAssociates v. Miner, 543 A.2d 656, 661 (R.I. 1988).
Finally, despite the fact that the parties had engaged in an informal relationship for the brief period between the assignment of the Lease to the Defendant in April 1998 and the running of the option period on September 30, 1998, the formality or informality of the brief relationship does nothing to change the fact that Poncelet never received timely notice that the Defendant intended to exercise the option to renew the Lease term. As the Court previously stated, the Defendant bore the risk of failing to send the mail certified or registered and the consequence of sending the notice to the wrong address. Accordingly, the Court holds that it would be inequitable to estop the Plaintiffs from proceeding with a trespass and eviction action when the Defendant's administrative oversight placed them in the position of a holdover tenant. Because the Defendant cannot attribute any detriment caused to any action or inaction of Poncelet, it cannot satisfy the elements necessary to assert equitable estoppel.
 CONCLUSION
To summarize, the Court finds that:
 1. The original Lease term commenced on January 1, 1979 and terminated on December 31, 1998. In order to extend the Lease term for a subsequent five-year period, Poncelet had to receive written notice of the Defendant's intention to exercise the option on or before September 30, 1998.
 2. Poncelet never received any notice sent by the Defendant purporting to exercise an option to extend the original Lease term.
 3. The failure of the Defendant to timely exercise its option to renew caused the Lease agreement between the parties to terminate on December 31, 1998.
 4. By continuing to occupy the premises and pay rent, the Defendant became a holdover tenant.
 5. The circumstances of the case at bar do not support a claim for equitable estoppel because any detriment incurred resulted from the failure of the Defendant to timely exercise the option to renew the Lease term.
 6. Accordingly, the Plaintiffs are entitled to possession of the premises.
Therefore, the Court reverses the judgment entered by the District Court for the Defendant, and hereby enters judgment for the Plaintiffs.
[1] On April 14, 2005, the parties jointly filed in open court a document entitled "Trial Stipulation" which recited ten (10) stipulated facts and included a copy of the lease and other relevant documents as exhibits.
[2] Felix Poncelet died on January 1991. As the successor landlord of the Premises, Ruth Poncelet testified that her duties included collecting rent, and paying applicable insurance premiums.
[3] Lease § 25, captioned NOTICES TO TENANT, reads in relevant part: "Any notice required to be given to Tenant under the terms of this Lease shall be in writing and mailed via Registered or Certified Mail . . ." Lease § 26, captioned NOTICES TO LANDLORD, reads in relevant part, "Any notice and the rental payments required to be given to the Landlord under the terms of the Lease shall be in writing and mailed via Registered or Certified Mail to the Landlord . . ."
[4] Roger Lockwood is the President of both L/M TacoRI, Inc. and Lockwood/McKinnon Company, Inc., a/k/a Lockwood/McKinnon Taco Ventures — the management corporation for L/M TacoRI, Inc. At the time of the assignment, Taco RI was operating 19 Taco Bells throughout Rhode Island.
[5] Because the exercise of an option is not effective until received, the dispositive question for purposes of this case is not whether the Defendant mailed the notice, but rather whether Poncelet received the notice. Consequently, the Court will accept the Defendant's representation that said notice was mailed to Poncelet on August 5, 1998.